### FREIFELD et al. v. M. GROH'S SONS.

(Supreme Court, Appellate Division, First Department.   December 21, 1906.)

1. TRIAL—QUESTION FOR COURT OR JURY—EXISTENCE OF CONTRACT.

Where, in an action on an alleged contract to pay a portion of the taxes on certain property, the evidence as to the existence of the contract was undisputed, such question was one for the court, and not for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 336.]

2. CONTRACTS—EXISTENCE—EVIDENCE.

In an action on an alleged contract to pay a portion of the taxes on certain real estate, evidence *held* insufficient to establish the making of such contract.

3. CORPORATIONS—OFFICERS—MISUSE OF FUNDS—CONTRACT—EVIDENCE.

That the president of defendant corporation for five years contributed from the corporation's funds to the payment of taxes on plaintiff's real estate, without any obligation on the part of the corporation to do so, was no evidence of a valid agreement by the corporation to continue such contributions.

Clarke and Houghton, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by George Freifeld and others against M. Groh's Sons. From a judgment in favor of plaintiff and from an order denying defendant's motion for a new trial, they appeal. Reversed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Thomas F. Keogh, for appellant.
Charles G. Bennett, for respondents.

INGRAHAM, J. The action was brought to recover upon an alleged contract by which the defendant agreed to pay to one Robert F. Bixby, individually and as trustee, a part or proportion of the taxes which should thereafter in each year be assessed on certain demised premises which had been leased by Robert F. Bixby, individually and as trustee, to the defendant. The complaint alleges that on June 13, 1888, the said Robert F. Bixby, individually and as trustee, leased certain premises to the defendant's assignor for a term of 20 years; that prior to May 1, 1897, the defendant claimed to have become the owner of the said lease, and was in possession of the premises, and that on May 17, 1897, Robert F. Bixby, individually and as trustee, leased the said premises to the defendant for a term of 10 years, from the 1st of May, 1908; that after the making of the lease of May 1, 1897, the defendant erected upon the said premises a large and valuable building, whereby the taxable value or valuation of the said premises was greatly increased; that thereafter, for a good and valuable consideration, the defendant made and entered into a written agreement, dated on or about November 9, 1898, wherein and whereby the defendant covenanted and agreed with the said Robert F. Bixby, individually and as trustee, the said landlord of the demised premises, would pay such part or proportion of the taxes which should thereafter in each year be assessed on the said premises as the excess of the whole taxable valuation thereof over the sum of $12,000 should bear to their whole taxable valuation, and the complaint further alleges that the taxable valuation of the said demised premises for the year 1903 was $33,000, and that the whole amount of the taxes duly assessed thereon was $456.51, and that the tax rate was about .014 per cent., and that the part of proportion of the said taxes for the year 1903, which the defendant ought to have paid under the said agreement, was seven-elevenths of the said $456.51, to wit, the sum of $296.87. The only evidence by which it was sought to prove such a contract was a consent dated November 9, 1898, and two letters written by the president of the defendant to Robert F. Bixby.

The instrument of November 9th is signed by Bixby, individually and as trustee, and by defendants. It is in form a consent that 238 and 240 West Thirty-Eighth street be apportioned permanently, at $12,000 for 238 West Thirty-Eighth, and at $18,000 for 240 West Thirty-Eighth. It does not say what is to be apportioned unless it is the lots, and does not say what is to happen after the apportionment. If we assume this relates to all assessments for taxation, there is nothing agreed to as to what is to happen after the apportionment. Certainly no agreement to pay any taxes can be implied, and there is no consideration either expressed or proved of any agreement if there was one. The first letter is dated September 28, 1899, and is as follows:

"Dear Sir: By written agreement of Nov. 9/98 you were to bear taxes on lot No. 64 upon a valuation of $12,000, which at this years rate $2.48 amounts to $297.60. Inclosed we send you our check payable to the receiver of taxes for $2,108.34 the entire amount having had the bill made out intact and we shall trouble you to send it to the tax office with bill on Monday and when it is returned to us we shall have a duplicate made out and sent you. In the meantime kindly favor us with your check for $297.60."

It will be noticed that the letter contained no reference of any agreement made by the defendant. It recites an agreement made by Bixby in regard to taxes upon this property. There was nothing in this letter which would justify a finding that any contract had ever been made by which the defendant had agreed to pay taxes upon the plaintiff's property. The other letter was dated October 4, 1899, written by the defendant to Bixby, in which it was stated:

"Yours of yesterday with inclosure of our check to hand. We herewith send you check for $74.46 being our proportion of taxes in excess of $12,000 valuation on 238 W. 28 St. to wit $3,000 at $2.48 which we trust you will find correct."

There is nothing in this letter to indicate that the defendant had ever made any agreement to pay taxes upon the plaintiff's property. Another letter from Bixby to the plaintiff, dated October 31, 1898, was introduced, stating that there would be a considerable increase of taxes in consequence of the putting up of a new building, but the writer then imagined that there was no help for that. There was also proof that the defendant had paid, for one or more years, a portion of the taxes upon the demised property.

At the close of the plaintiff's case the defendant moved to dismiss the complaint upon the ground that no contract had been proved. This motion was denied, and the defendant excepted. The court submitted the question to the jury, who found a verdict for the plaintiff. The question whether there was a contract was one for the court, and not for the jury, as the evidence was undisputed; but I fail to find from this testimony the slightest evidence to justify a finding that there was any contract, or evidence of a consideration for a contract. It appears that in May, 1897, the defendant was in possession of the premises under a lease, which expired on the 1st of May, 1908, when the plaintiffs' predecessor in title leased the property to the defendant for a term of 10 years, beginning on the 1st day of May, 1908. Under these leases, therefore, the defendant was entitled to the possession of the premises until 1918. It is not alleged or proved that the lease imposed any obligation on the defendant to pay any of the taxes upon the property. It is claimed that on November 9, 1898, after all these leases had been executed, the defendant made a contract agreeing to pay a portion of the taxes on the demised premises. There was, however, no evidence of such a contract, and, so far as appears, the defendant received no consideration for making any contract. No letter of the defendant refers to any promise made by it. The argument of counsel for the plaintiff is that, unless there was an agreement as a matter of fact, the defendant's president for five years gave away the money of his corporation as if making a Christmas gift or a contribution to his political party, but the fact that the president of the cor-

poration misused the funds of the corporation is certainly no evidence to show that there was a valid agreement that he should continue to misuse the money over which he had control; and it is a novel proposition that, if it is proved that the president of a corporation has misapplied the money of the corporation, there is to be inferred that he has agreed by a valid contract, based upon a sufficient consideration, to continue such misappropriation.

I think there was no evidence of any contract, nor was there any evidence of any consideration which would support a contract. It should be noticed that plaintiffs are not Bixby's personal representatives, and cannot enforce any contract of Bixby's, if one was made, and nothing is alleged to show that plaintiffs as devisees of Bixby or as successors to Bixby as trustee were vested with the right to enforce Bixby's contracts.

It follows that the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and McLAUGHLIN, J., concur. CLARKE and HOUGHTON, JJ., dissent.